### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **HARRY CARLOS OWEN,** ) | |
| Movant, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:02-0854** |
| ) | **(Criminal No. 5:00-0185)** |
| **UNITED STATES OF AMERICA,** ) | |
| Respondent. ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Supplemental Motion filed on July 12, 2004,[1] in which he raises the following grounds for relief under Blakely v. Washington, __ U.S. __, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004):

1. Whether the district court abused its discretion by enhancing petitioner's sentence for leadership in light of the recent Supreme Court ruling in the decision in Blakely v. Washington.

2. Whether the district court abused its discretion by enhancing petitioner's sentence for use of a minor to commit a crime in light of the recent Supreme Court ruling in the decision in Blakely v. Washington.

3. Whether the district court abused its discretion by enhancing petitioner's sentence for possession of a firearm in light of the recent Supreme Court ruling in the decision in Blakely v. Washington.

(Document No. 851, pp. 1-2.)

### FACT AND PROCEDURE

Movant was charged with seventeen others in a twenty-three count Indictment filed on September 6, 2000. (Document No. 1.) Movant was charged in count one with violating 21 U.S.C.

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

§ 846 by conspiring with his co-Defendants and Ronald Cleveland Owen, named as a coconspirator but not charged in the Indictment, to violate 21 U.S.C. § 841(a)(1) by knowingly and intentionally distributing one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana, oxycodone and hydromorphone. Movant was further charged in count sixteen with violating 21 U.S.C. § 843(b) by knowingly and intentionally using the public telephone system in committing, causing and facilitating the commission of a felony in violation of 21 U.S.C. § 846. Movant filed three Motions to Dismiss the Indictment prior to trial.

On October 13, 2000, Movant moved to dismiss the Indictment claiming that testimony presented to the Grand Jury by his brother, Ronald Cleveland Owen, was perjured. (Document No. 195.)[2] On January 4, 2001, he moved to dismiss claiming that "the Indictment is over-broad, and encompasses several different groups of individuals having nothing to do with one another." (Document No. 219.) The Court denied both Motions. (Document No. 326.) On March 12, 2001, the day trial commenced, Movant filed a Renewed Motion to Dismiss Indictment. (Document No. 389.) The matter was tried commencing on March 12, 2001, and on March 15, 2001, the jury found Movant guilty as charged in counts one and sixteen completing a Special Verdict/Interrogatories finding Movant guilty of, among other things, conspiring to distribute 1,000 kilograms or more of marijuana. (Document Nos. 402 and 404.) On March 19, 2001, Movant filed a Motion for New Trial and/or Judgment of Acquittal. (Document No. 407.) Movant filed an Additional Motion for

---

[2] On September, 2000, Ronald Cleveland Owen pled guilty to a two count Information charging him with conspiring with others to distribute marijuana and oxycodone in violation of 21 U.S.C. § 846 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). *United States v. Ronald Cleveland Owen*, Criminal No. 5:00-0210. At sentencing on April 30, 2001, the Court, Judge Haden presiding, found that Ronald Cleveland Owen was entitled to a downward departure for his substantial assistance and sentenced him to a 96 month term of incarceration and a 5 year term of supervised release was required him to pay a $200 special assessment.

Judgment of Acquittal and/or New Trial on March 21, 2001. (Document No. 210.) The Court denied Movant's post-trial Motions by Order filed on July 10, 2001. (Document No. 561.) Movant was sentenced on July 9, 2001, to 324 months in prison and 5 years supervised release and was assessed a $200 special assessment and a $5,000 fine. (Document Nos. 568 and 569.)

Movant appealed his conviction and sentence. He claimed on appeal that (1) the District Court abused its discretion in denying his Motions to Dismiss count one of the Indictment and to strike references to individuals "known and unknown to the Grand Jury."; (2) the evidence was insufficient to convict him; (3) the District Court erred in determining the drug quantity for which he was responsible; (4) the District Court erred in enhancing his sentence under U.S.S.G. § 3B1.1 for being a leader or organizer of criminal activity; (5) the District Court erred in applying a two-level enhancement under U.S.S.G § 2D1.1(b)(1) for possessing a firearm during the commission of the offense; and (6) the District Court erred in applying a two-level enhancement under U.S.S.G. § 3B1.4 for using a minor to commit the offense. Finding no error, the Fourth Circuit affirmed Movant's conviction and sentence by unpublished decision dated December 18, 2001. United States v. Owen, 2001 WL 1613513 (4th Cir. (W.Va.) Dec. 18, 2001) (Document No. 696.) Movant did not seek review of the Fourth Circuit's decision in the United States Supreme Court.

On June 17, 2002, Movant filed his Motion pursuant to 28 U.S.C. § 2255, in which he set forth the following grounds for the Court to set aside his convictions and vacate his sentence:

1. Contravention of procedural law, i.e., Federal Rules of Criminal Procedure, Rule 7[b] by the respondent to further a government interest that denied a fair trial to petitioner.
2. Knowing, and planned contravention of discovery, i.e., Brady vs Maryland, 83 S.Ct. 1194, and subsequent Brady related case law, evidence of the above procedural contravention, that would have been favorable to the defense, was withheld to further the denial of a fair trial.
3. Obstruction of justice by withholding the aforementioned evidence from the

3

      defense that denied a fair trial.
4. Impropriety by AUSA, Monica K. Schwartz in a related case, i.e., USA v. Ronald Cleveland Owen [Information] was filed, heard, and decided in other than the trial court, i.e., court presided over by Chief Judge Charles H. Haden II contributing to the obstruction of justice.
5. No enactments of any laws that allow, or even suggest that U.S. Sentencing Guidelines supersede the U.S. Constitution's Fifth, and Sixth Amendments.
6. Contravention of the Sixth Amendment, i.e., "to be informed of the nature, and causes of criminal accusations".
7. Contravention of the Fifth Amendment when accusations of offense elements [U.S. Guidelines] 2D1.1[b][c], firearm, 3B1.1[a], leadership, and 3B1.4 use of a minor were made by the trial judge and not a grand jury when those offense elements required determination by a jury.
8. Imprisonment without due process of law, and contradiction of the Court's charges to the jury.

On December 16, 2003, the undersigned entered Proposed Findings and Recommendation, which remain pending, that the District Court deny Movant's § 2255 Motion. (Document No. 842.) On July 12, 2004, Movant filed his instant Supplemental Motion, requesting consideration of his claims under Blakely. (Document No. 851.)

## ANALYSIS

Petitioner argues that his sentence is unconstitutional under the Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In Blakely, the Supreme Court reaffirmed the Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." and invalidated Washington's sentencing scheme because it required the judge to impose a sentence based on facts neither

admitted by the defendant nor reflected in the jury verdict, in violation of the Sixth Amendment.[3] Blakely, at 2537. On January 12, 2005, the Supreme Court decided United States v. Booker, and United States v. Fanfan, __ U.S. __, 125 S. Ct. 738, 160 L.Ed.2d 621, which applied the holding in Blakely to the Federal Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." __ U.S. at __, 125 S. Ct. at 756. The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" __ U.S. at __, 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987)).

Movant's case has concluded direct review and is final.[4] Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review. See Tyler v. Cain, 533 U.S. 656, 662-63, 121 S.Ct. 2478, 2482, 150 L.Ed.2d 632 (2001) (holding "that a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be

---

[3] In *Blakely*, the Court defined the phrase "statutory maximum" for *Apprendi* purposes as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, __ U.S. at __, 124 S.Ct. at 2537 (emphasis in original).

[4] For purposes of retroactivity analysis and collateral review, Movant's sentence became final on March 18, 2002 (90 days after entry of the Fourth Circuit's entry of judgment affirming his conviction and sentence). *See Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003)(holding that "[f]inality attaches when the Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires.")(citing, *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (holding that "[a] state conviction and sentence becomes final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.").

retroactive."). Although the Fourth Circuit Court of Appeals has not decided whether Booker applies retroactively to persons whose convictions were final prior to the Supreme Court's decisions in Blakely and Booker, several circuit courts of appeals and district courts have held that it does not.

The Circuit Court of Appeals for the Second Circuit held in Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005), that "neither Booker nor Blakely appl[ies] retroactively to [a] collateral challenge." In Guzman v. United States, __ F.3d __, 2005 WL 803214, *4 (2d Cir. Apr. 8, 2005), the Second Circuit reaffirmed its decision in Green and expressly held that "Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued." Similarly, the Eleventh Circuit decided, in Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005), "that Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." Likewise, the Seventh Circuit has ruled that Booker does not apply retroactively to cases on collateral review. McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005). The Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, __ U.S. __, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." __ U.S. at __, 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid.* That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841,

6

> 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.
>
> The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.
>
> \* \* \*
>
> The Court held in *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. _ U.S. at _, 124 S. Ct. at 2525. What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. See also *Curtis*, 294 F.3d at 843-44.
>
> We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, _ U.S. _, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004), came down, is the appropriate dividing line; *Blakely* reserved decision about the status of the federal Sentencing Guidelines, see *id*. at 2538 n.9, so *Booker* itself represents the establishment of a new rule about the federal system.

McReynolds, 397 F.3d at 480-81.

Similarly, the Third Court held in In re Olopade, __ F.3d __, 2005 WL 820550, *3 (3rd Cir.

Apr. 11, 2005), that Booker is not retroactively applicable to cases on collateral review. The Sixth

Circuit ruled in Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005) that

7

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague's* second exception. *Beard [v. Banks*, __ U.S. __], 124 S.Ct. [2504], 2513-14 [159 L.Ed.2d 494 (2004)]. We hold that *Booker's* rule does not either. *Accord McReynolds*, 397 F.3d at 481.

The Tenth Circuit likewise held in United States v. Price, 400 F.3d 844, 848-49 (10th Cir. 2005), that Blakely was a new rule of criminal procedure that was not subject to retroactive application on collateral review as follows:

> A new procedural rule, such as that announced in *Blakely*, will apply retroactively only if it falls into one of two narrow exceptions. *See Teague*, 489 U.S. at 307, 109 S.Ct. 1060. The first exception applies to a new rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 307, 109 S.Ct. 1060 (quotation omitted). *Blakely* does not implicate that exception. [footnote omitted] *See [United States v.] Mora*, 293 F.3d [1213,] 1218 (holding *Apprendi* does not implicate *Teague's* first exception).
> *Teague's* second exception applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *O'Dell [v. Netherland]*, 521 U.S. [151,] 157, 117 S.Ct. 1969 [, 138 L.Ed.2d 351 (1997)]. (quotation omitted). "To qualify as a 'watershed' rule of criminal procedure, the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of the proceeding." *Mora*, 293 F.3d at 1218-19 (quotation omitted). "This exception is defined narrowly." *Id* at 1219.
> *Blakely* did not announce a new watershed rule of criminal procedure that implicates the "fundamental fairness and accuracy of the criminal proceeding." *O'Dell*, 521 U.S. at 157, 117 S.Ct. 1969. First, *Blakely* does not affect the determination of a defendant's guilt or innocence. Rather, it addresses only how a court imposes a sentence, once a defendant has been convicted.
> Further, the Supreme Court has previously determined that a change in the law requiring that juries, rather than judges, make the factual findings on which a sentence is based did not announce a watershed rule of criminal procedure. [footnote omitted]. *See Summerlin*, __ U.S. at __ - __, 124 S.Ct. at 2524-26. Similarly, we have previously held that a change in the law requiring juries to find these sentencing facts beyond a reasonable doubt, rather than by a preponderance of the evidence, also does not announce a watershed rule of criminal procedure. *See Mora*, 293 F.3d at 1219 (holding *Apprendi*, including its quantum of proof requirement, did not announce watershed rule); *see also Sepulveda v. United States*, 330 F.3d 55, 61 (1st Cir. 2003)

(holding, in addressing *Apprendi's* retroactivity, that "'a decision . . . by a judge (on a preponderance standard) rather than a jury (on the reasonable doubt standard) is not the sort of error that necessarily undermines the fairness . . . of judicial proceedings,'" quoting *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002)); *Coleman v. United States*, 329 F.3d 77, 88-90 (2d Cir. 2003) (rejecting argument that *Apprendi's* requiring Government to prove sentencing factors beyond a reasonable doubt was watershed rule of criminal procedure). We conclude, therefore, that *Blakely* did not announce a watershed rule of criminal procedure that would apply retroactively to initial § 2255 motions. *See, e.g., Rowell v. Dretke*, 398 F.3d 370, 2005 WL 151916, at *8 (5th Cir. Jan. 25, 2005); *Rucker v. United States*, 2005 WL 331336, at *1 (D. Utah Feb. 10, 2005); *Gerrish v. United States*, 353 F.Supp.2d 95, 2005 WL 159642, at *1 (D. Me. Jan. 25, 2005); *United States v. Johnson*, 353 F.Supp.2d 656, 2005 WL 170708, at *1 (E.D. Va. Jan. 21, 2005); *see also In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005) (noting "the Supreme Court has strongly implied that *Blakely* is not to be applied retroactively"); *cf. McReynolds*, 397 F.3d at 481 (7th Cir. 2005) (holding *Booker* does not apply retroactively in initial § 2255 motions).

A similar conclusion was reached in Rucker v. United States, 2005 WL 331336, No. 2:04-cv-00914PGC (D. Utah, Feb. 10, 2005). Stacy Rucker pled guilty to armed bank robbery in July, 2003, with sentencing in October, 2003, before both Blakely and Booker. His offense level was enhanced for property taken from a financial institution, discharge of a firearm, and loss exceeding $10,000, and reduced for acceptance of responsibility. He filed a Motion under 28 U.S.C. § 2255, asserting that Blakely (and Booker) should be applied retroactively to him, and that his sentence was unconstitutional. The District Court held:

> The approach to sentencing required by the *Blakely* and *Booker* decisions is a new rule. Moreover, it is a procedural rule about the allocation of fact-finding power between judge and jury and about proof beyond a reasonable doubt. Such a new procedural rule applies retroactively only where it implicates the fundamental fairness and accuracy of a criminal proceeding. The *Blakely/Booker* rule does not implicate fundamental fairness. Indeed, *Booker* itself requires the courts to continue to "consider" the Guidelines in imposing sentence. Accordingly, the *Blakely/Booker* rule does not apply retroactively to Mr. Rucker (and others whose convictions became final before *Blakely*).

Rucker v. United States, 2005 WL 331336, *1.

Based on <u>Green</u>, <u>Guzman</u>, <u>Varela</u>, <u>McReynolds</u>, <u>Olopade</u>, <u>Humphress</u>, <u>Price</u>, and <u>Rucker</u>, the undersigned proposes that the presiding District Judge find that Movant's convictions were final prior to both <u>Blakely</u> and <u>Booker</u>, and that those decisions do not apply retroactively to his sentence.

**PROPOSAL AND RECOMMENDATION**

Accordingly, the undersigned respectfully proposes that the Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** without prejudice Movant's Supplemental Motion (Document No. 851.) and **DISMISS** and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.) <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge

Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record.

ENTER: April 21, 2005.

R. Clarke VanDervort
United States Magistrate Judge